UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
UNITED STATES SECURITIES AND EXCHANGE       :
COMMISSION,                                 :
                                            :
                        *Plaintiff*,        :
                                            :
            -v-                             :            No. 20 Civ. 3997 (JGK)
                                            :
WILLIAM SADLEIR,                            :
                                            :
                        *Defendant.*        :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO INTERVENE AND FOR A STAY OF PROCEEDINGS**


AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
*Attorney for the United States of America*


Jared Lenow
Assistant United States Attorney
        *- Of Counsel -*

## **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................ 2

  A.  Relevant Entitles and Individuals ........................................................... 2

  B.  The Schemes ........................................................................................... 3

ARGUMENT .......................................................................................................... 4

    I. THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE ...... 4

    II. A COMPLETE STAY OF THE SEC ACTION IS WARRANTED ................................ 6

    A.  Applicable Law........................................................................................ 6

    B.    Discussion ........................................................................................... 7

      1.  The Extent of Overlap ..................................................................... 7

      2.  The Status of the Criminal Case .................................................... 7

      3.  The Plaintiff's Interests................................................................... 8

      4.  The Defendant's Interests .............................................................. 8

      5.  The Court's Interests....................................................................... 9

      6.  The Public Interest ....................................................................... 10

CONCLUSION........................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Baxter* v. *Palmigiano*, 425 U.S. 308 (1976) ................................................................. 8

*Bureerong* v. *Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ............................................... 5

*Campbell* v. *Eastland*, 307 F.2d 478 (5th Cir. 1952) .................................................... 12

*First Merchs. Enter.,* v. *Shannon*, 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989) ............................ 5

*Governor of the Fed'l Reserve Sys.* v. *Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991) ................. 5, 12

*Harris* v. *Nassau County*, 2014 U.S. Dist. LEXIS 94554 (E.D.N.Y. 2014) ................................... 1

*In re Ahead By A Length, Inc.*, 78 B.R. 708 (S.D.N.Y. 1987) ........................................ 11

*In re Ivan F. Boesky Secs. Litig.*, 128 F.R.D. 47 (S.D.N.Y. 1989) ................................... 12

*In re Par Pharm., Inc. Secs. Litig.*, 133 F.R.D. 12 (S.D.N.Y. 1990) ................................. 7

*Kashi* v. *Gratsos*, 790 F.2d 1050 (2d Cir. 1986) ........................................................ 6

*Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012) ..................... 6, 7

*Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201 (S.D.N.Y. 1989) ................... 7

*Parker* v. *Dawson*, 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007) ................................... 7

*Phillip Morris Inc.* v. *Heinrich*, 1996 WL 363156 (S.D.N.Y. June 28, 1996) .................. 11

*SEC* v. *Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) .............. 11

*SEC* v. *Chestman*, 861 F.2d 49 (2d Cir. 1988) ......................................................... 5

*SEC* v. *Contorinis*, 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012) ..................................... 9

*SEC* v. *Credit Bancorp.*, 297 F.3d (2d Cir. 2002) .................................................... 5

*SEC* v. *Downe*, 1993 WL 22126 (S.D.N.Y. June 26, 1993) ........................................... 5

*SEC* v. *Dubovoy*, 15 Civ. 6076 (D.N.J. Jan. 29, 2016) .............................................. 1

*SEC* v. *Nicholas*, 569 F. Supp. 2d (C.D. Cal. 2008) .............................................. 1, 9

*SEC* v. *One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 U.S. Dist. LEXIS 162772 (S.D.N.Y. Nov. 9, 2012) ..................................................... 9

*SEC* v. *Shkreli*, 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) .............................. 1, 7, 8

*SEC* v. *Treadway*, 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) .................................. 6

*SEC* v. *Tuzman*, 15 Civ. 7057 (AJN) (S.D.N.Y. Mar. 1, 2016) ............................. 6, 7, 9

*Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al.* v. *Transworld Mechanical, Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995)........................................................................ 8, 9

*Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. (E.D.N.Y. 1992) ................................ 5, 9

*United States* v. *McCarthy*, 292 F. Supp. 937 (2d Cir. 1968)........................................................ 10

*United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352 (S.D.N.Y. 1966).................. 7

*United States* v. *Percevault*, 490 F.2d 126 (2d Cir. 1974)........................................................ 10, 11

*Volmar Distrib., Inc.* v. *New York Post Co.*, 152 F.R.D. (S.D.N.Y. 1993) ................................ 6, 7

**STATUTES**

18 U.S.C. § 3500............................................................................................................................ 10

Fed. R. Crim. P. 15 ........................................................................................................................ 11

Fed. R. Crim. P. 16(a)(2) .............................................................................................................. 10

## PRELIMNARY STATEMENT

The United States of America, by and through the Acting United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its motion (i) to intervene in the above-captioned case (the "SEC Case"), pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the completion of the trial or other disposition in the parallel criminal case, *United States* v. *William Sadleir*, 20 Cr. 320 (PAE) (the "Criminal Case").   Neither party in the SEC Case opposes the Government's motion to intervene and stay this action.

The Criminal Case arises from the same set of facts and circumstances that underlie the SEC Case.   As a result, a full stay is appropriate because any exchange of discovery would be asymmetrical and would allow the defendant in the Criminal Case and SEC Case, William Sadleir, to circumvent the criminal discovery rules and improperly tailor his defense in the Criminal Case. In similar situations, courts in this Circuit and others have entered a complete stay of parallel actions when there is a parallel criminal prosecution with overlapping defendants and facts, even over a defendant's objection.   *See, e.g.*, *SEC* v. *Shkreli*, 2016 WL 1122029, at *1 (E.D.N.Y. Mar. 22, 2016); *SEC* v. *Dubovoy*, 15 Civ. 6076 (D.N.J. Jan. 29, 2016); *Harris* v. *Nassau County*, 2014 U.S. Dist. LEXIS 94554, at *10 (E.D.N.Y. 2014); *SEC* v. *Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).   For the reasons set forth below, the Government respectfully requests that this Court enter an order staying this action until the completion of the Criminal Case.

- 1 -

## BACKGROUND

On May 22, 2020, a Criminal Complaint (the "Criminal Complaint") against William Sadleir was unsealed in the United States District Court for the Southern District of New York.[1] The Criminal Complaint charged Sadleir with two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.   Also on May 22, 2020, the SEC filed a complaint (the "SEC Complaint") against Sadleir in this parallel civil action.

On June 23, 2020, an Indictment, captioned *United States* v. *William Sadleir*, 20 Cr. 320 (PAE), was returned by a grand jury in this District.[2]   The Indictment charged Sadleir with the same offenses as the Criminal Complaint.

The SEC Case and the parallel Criminal Case arise out of the same underlying events.   As alleged in both the Criminal Case and the SEC Case, William Sadleir engaged in multiple fraudulent schemes relating to investments made by a New York-based investment fund (the "Fund") in Aviron Pictures, LLC and its affiliated entities (collectively, "Aviron").   Additional detail on the Fund, Aviron, and the fraudulent schemes follows.

### A.    Relevant Entitles and Individuals

As alleged in both the Criminal Case and the SEC Case, the Fund is a publicly traded, closed-end investment fund.   Shares in the Fund trade on the New York Stock Exchange.   As of in or about December 2019, the Fund had approximately $649.1 million in assets.

William Sadleir was the chairman and chief executive officer of Aviron, and oversaw its operations from in or about 2015 until in or about December 2019.   Aviron participated in the

---

[1]  A copy of the Criminal Complaint is attached hereto as Exhibit A.

[2]  A copy of the Indictment is attached hereto as Exhibit B.

distribution of a number of films in the United States.

**B.    The Schemes**

As alleged in both the Criminal Case and the SEC Case, William Sadleir engaged in two fraudulent schemes relating to an approximately $75 million investment made by the Fund in Aviron.

In one of the schemes (the "Advertising Scheme"), Sadleir misappropriated millions of dollars in funds from Aviron that had been invested in Aviron by the Fund.   Sadleir represented to the Fund that this money had been invested by Aviron in pre-paid media credits with the advertising placement company MediaCom Worldwide, LLC ("MediaCom"), which is a subsidiary of the advertising and media agency GroupM Worldwide Inc. ("GroupM Worldwide"). Instead, Sadleir, using the bank account for a sham entity he had created, illicitly transferred out of Aviron over $25 million of those funds.   Specifically, Sadleir created a sham New York-based company called GroupM Media Services, LLC (the "Sham GroupM LLC") designed to appear as if it was the legitimate entity, GroupM Worldwide, and a corresponding bank account in the name of that sham entity.   Sadleir then used a significant portion of those illicitly transferred funds for his personal benefit, including to purchase a private residence in Beverly Hills for approximately $14 million.   Sadleir then falsely represented to the Fund that Aviron had purchased an approximately $27 million balance in pre-paid media credits with MediaCom that were available to promote future Aviron films, and pledged a portion of those credits to the Fund as collateral for additional loans, when in fact the claimed credits did not exist due to Sadleir's misappropriation. As part of these false representations, Sadleir also created a fake identity of a purported New York-based female employee of the Sham GroupM LLC named "Amanda Stevens" who corresponded with a representative of the Fund, assuring the Fund that Aviron had an approximately $27 million

balance in pre-paid media credits with the Sham GroupM LLC.   In fact, Sadleir himself posed as Amanda Stevens when engaging in email exchanges with a representative from the Fund.

In the other scheme (the "UCC Scheme"), Sadleir engineered the illicit and fraudulent sale and refinancing of assets worth an estimated $3 million that secured the Fund's loans to Aviron. The Fund had secured its investment in Aviron by, among other means, obtaining UCC liens in 2017 and 2018 on certain intellectual property and other assets relating to Aviron's films.   In 2019, Sadleir used the forged signature of one of the Fund's portfolio managers on releases to remove the Fund's UCC liens on certain of these secured assets in order to sell or refinance them without the Fund's consent, thus depriving the Fund of its collateral on outstanding loans, loans on which Aviron ultimately defaulted.

## ARGUMENT

The Government's requests to intervene and for a complete stay of the SEC Action should be granted.   If this case were to proceed, there would be a risk of significant interference with the Criminal Case.   A complete stay of discovery would prejudice no party to the SEC Action; would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case.   As noted above, neither party opposes the Government's motion to intervene and stay this action.

## I. THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction which is the subject of the action" and the applicant is so situated that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests."   Alternatively,

Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect the SEC Action would have on the Criminal Case and the similarity of claims and facts between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions — especially when the government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC* v. *Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC* v. *Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). Indeed, "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is . . . already underway that involves common questions of law or fact." *SEC* v. *Downe*, 1993 WL 22126, at *11 (S.D.N.Y. June 26, 1993); *see also First Merchs. Enter.,* v. *Shannon*, 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989) (allowing intervention); *Governor of the Fed'l Reserve Sys.* v. *Pharaon*, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same).

Intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong* v. *Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest."). Neither party in this case objects to the Government's motion to intervene.

## II. A COMPLETE STAY OF THE SEC ACTION IS WARRANTED

### A.    Applicable Law

This Court has the inherent power to stay a civil proceeding in the interests of justice pending the completion of the parallel criminal trial.   *See Kashi* v. *Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"   *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936)).    In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*SEC* v. *Treadway*, 2005 WL 713826, at *2-*3 (S.D.N.Y. Mar. 30, 2005) (quoting *In re Worldcom, Inc. Secs. Litig.*, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also SEC* v. *Tuzman*, 15 Civ. 7057 (AJN), at 2 (S.D.N.Y. Mar. 1, 2016); *Volmar Distrib., Inc.* v. *New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).    "Balancing these factors is a case-by-case determination." *Volmar Distrib.*, 152 F.R.D. at 39.    But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court."

*Louis Vuitton*, 676 F.3d at 99.   The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case."   *Id.* (quotation marks omitted).

### B.   Discussion

Application of each of the relevant factors here weighs in favor of the stay sought by the Government.

#### 1.   The Extent of Overlap

The Criminal Case and the SEC Action involve the same fraudulent schemes, and identical facts, witnesses, and issues.   "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."   *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker* v. *Dawson*, 2007 WL 2462677, at \*4 (E.D.N.Y. Aug. 27, 2007) (same); *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

The identical facts and issues at play in both cases weigh heavily in favor of a stay.   *See, e.g.*, *Shkreli*, 2016 WL 1122029, at \*4; *Tuzman*, 15 Civ. 7057 (AJN), at 3.

#### 2.   The Status of the Criminal Case

The return of an indictment in the Criminal Case is also a factor that weighs in favor of a stay.   *See Shkreli*, 2016 WL 1122029, \*4 ("[T]he strongest argument for granting a stay is where a party is under criminal indictment."); *In re Par Pharm., Inc. Secs. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay

- 7 -

a civil proceeding when the criminal investigation has ripened into an indictment").    As the court

explained in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al.* v. *Transworld*

*Mechanical, Inc.*:

> A stay of a civil case is most appropriate when a party to the civil
> case has already been indicted for the same conduct for two reasons:
> first, the likelihood that a defendant may make incriminating
> statements is greatest after an indictment has issued, and second, the
> prejudice to the plaintiffs in the civil case is reduced since the
> criminal case will likely be quickly resolved.

886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *see also Tuzman*, No. 15 Civ. 7057 (AJN), at 3 (an

indictment normally weighs heavily in favor of a stay absent particular facts indicating that the

criminal case may not be resolved expeditiously).

Sadleir has been indicted.   Thus, this factor also militates in favor of a stay.

**3.    The Plaintiff's Interests**

The SEC has indicated that it takes no position on the request for a stay.   In light of the

fact that the SEC does not oppose the requested order to stay this case, there is no basis to believe

that there would be prejudice to the plaintiff by staying this action.   *See Shkreli*, 2016 WL

1122029, at *5 (citing cases).

**4.    The Defendant's Interests**

There is very little, if any, prejudice to William Sadleir that would result from the stay

sought by the Government.    Defendants in parallel criminal cases typically have an interest in not

being deposed because, if they assert their Fifth Amendment privilege, an adverse inference may

be drawn against them in the civil case.   *See Baxter* v. *Palmigiano*, 425 U.S. 308, 318 (1976)

(Fifth Amendment does not forbid adverse inferences against parties to civil actions).    But as one

district court has noted, "[t]he specter of parties and witnesses invoking their Fifth Amendment

rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants." *Nicholas*, 569 F. Supp. 2d. at 1070.

As a result, in this instance, granting a stay of the SEC Action to permit the Criminal Case to proceed to its conclusion would actually benefit Sadleir, because such a stay obviates forcing him to make the choice between being prejudiced in the SEC Action if he asserts his Fifth Amendment rights or being prejudiced in the Criminal Case if he waives those rights.

Moreover, any potential concerns about the loss of evidence, *see Trustees of Plumbers*, 886 F. Supp. at 1140, are inapposite because witnesses and document custodians have already gathered and produced to the Government and the SEC a significant volume of relevant documents, ensuring that those materials would be available for future discovery in this action. Furthermore, the substantial overlap in witnesses mitigates any potential concerns about memories fading because interview notes and trial testimony in the Criminal Case will preserve the memories of the witnesses in this action. *See Tuzman*, 2016 WL 1122029, at *6.

Finally, as discussed above, Sadleir does not oppose the requested order to stay this case

### 5.    The Court's Interests

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the SEC Action. *See SEC* v. *Contorinis*, 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *SEC* v. *One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 U.S. Dist. LEXIS 162772, at *12 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from

- 9 -

the Criminal Case no matter its outcome."); *Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered).   Because the Criminal Case's outcome will undoubtedly affect the conduct, scope, and result of the SEC Action, thereby streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

      **6.**      **The Public Interest**

      The Government and the public have an important interest in insuring that civil discovery is not used to circumvent the restrictions that pertain to criminal discovery — restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence, or intimidate witnesses.   *See United States* v. *Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States* v. *McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

      Rule 16 of the Federal Rules of Criminal Procedure expressly limits the documents that are subject to discovery in a criminal case and further states that it does not "authorize the discovery . . . of statements made by government witnesses or prospective government witnesses except as

- 10 -

provided in 18 U.S.C. § 3500."   Fed. R. Crim. P. 16(a)(2).   Title 18, United States Code, Section

3500 provides that in criminal cases, the statements of Government witnesses — such as witness

testimony taken by the SEC — shall not be "the subject of subpoena, discovery, or inspection until

said witness has testified on direct examination in the trial of the case."   The public policy against

premature disclosure of the Government's criminal case is so strong that courts are without power

to order early production of witness statements.   *See United States* v. *Coppa (In re United States)*,

267 F.3d 132, 145 (2d Cir. 2001) (noting that "[w]e have previously held that the Jencks Act

prohibits a District Court from ordering the pretrial disclosure of witness statements," and granting

petition for a writ of mandamus to reverse district court's order for early disclosure of 3500

material); *In re United States*, 834 F.2d 283, 286-87 (2d Cir. 1987) (granting mandamus to vacate

order requiring pretrial production of witness statements); *Percevault*, 490 F.2d at 129, 131 (noting

that "the prosecution cannot be compelled to disclose statements of the witness before he has

testified on direct examination," and reversing order suppressing witnesses' testimony on the

grounds that the Government did not produce witness statements in advance of trial despite being

ordered to do so).   Moreover, except under "exceptional circumstances" and pursuant to court

order, the criminal rules do not provide for depositions as a means of discovery.   *See In re Ahead*

*By A Length, Inc.*, 78 B.R. 708, 711 (S.D.N.Y. 1987); Fed. R. Crim. P. 15.

Courts repeatedly have recognized that a civil litigant should not be allowed to use civil

discovery to avoid the restrictions that would otherwise pertain in criminal discovery to a criminal

defendant.   *See SEC* v. *Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb.

27, 2003) (in context of request for civil stay of discovery due to pending criminal investigation,

"[t]he principal concern with respect to prejudicing the government's criminal investigation is that

its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases");

*Phillip Morris Inc.* v. *Heinrich*, 1996 WL 363156, at \*19 (S.D.N.Y. June 28, 1996) (without a stay, defendants "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *Governor of the Fed'l Reserve Sys.* v. *Pharaon*, 140 F.R.D. at 639 ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial") (quoting *Campbell* v. *Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)); *In re Ivan F. Boesky Secs. Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the public interest in the criminal case is entitled to precedence over the civil litigant").

\*          \*          \*

In sum, because there is virtually complete overlap between the parallel proceedings; William Sadleir has already been indicted in the Criminal Case; there is a strong public interest in preventing the civil discovery rules from being used to improperly circumvent criminal discovery rules; any discovery would be improperly asymmetrical; and a resolution of the Criminal Case will preserve judicial resources and streamline this action, the balance of factors overwhelmingly favors the requested discovery stay.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application

to intervene and for a complete stay of discovery be granted in its entirety.

Dated: New York, New York
      October 2, 2020

                             Respectfully submitted,

                             AUDRY STRAUSS
                             Acting United States Attorney

By:     /s/ Jared Lenow
           Jared Lenow
           Assistant United States Attorney
           United States Attorney's Office
           One Saint Andrew's Plaza
           New York, New York 10007
           (212) 637-1068

The undersigned counsel hereby certifies that this brief complies with this Court's

formatting rules, and contains approximately 4,445 words.

By:  ____/s/ Jared Lenow_____

Jared Lenow
Assistant United States Attorney
United States Attorney's Office
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-1068