

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

June 4, 2022

**Via ECF**

Hon. John G. Koeltl
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 14A
New York, NY 10007

      Re:    <u>SEC v. William Sadleir</u>, 20 Civ. 3997 (JGK)

Dear Judge Koeltl:

Plaintiff Securities and Exchange **Commission** (the "SEC") respectfully submits this letter motion (1) seeking to lift the stay in this case for the limited purpose of submitting a proposed partial consent judgment ("Judgment") as to Defendant William Sadleir ("Sadleir"); and (2) seeking approval and entry of the Judgment if the Court so lifts the stay. Sadleir consents to this motion in its entirety, and the Intervenor, the United States, consents to lifting the stay for this purpose and takes no position on the Judgment. The Judgment—which would impose certain injunctive relief but leave open the issue of monetary relief for later resolution by motion or settlement after Sadleir's sentencing in his related criminal proceeding—is fair and reasonable and does not disserve the public interest.

**I.**      **Factual Background**

      **A.**      **Procedural History**

On May 22, 2020, the SEC filed its Complaint against Sadleir. (No. 1.)[1] The Complaint alleges that, while he managed and controlled Aviron Group, LLC, and related companies (collectively "Aviron"), Sadleir engaged in a scheme to misappropriate millions of dollars from a publicly-traded investment company known as BlackRock Multi-Sector Income Trust ("BIT") using a sham company and forged signatures. (Id. at ¶ 2.) From 2015 until 2019, BIT, with Sadleir's encouragement, invested $75 million in Aviron to support its film distribution business. (Id. at ¶¶ 17-19 & 23.) BIT invested through two notes, which were securities, issued in 2015 and 2017, respectively. (Id. at ¶ 2.) In 2017, Sadleir fraudulently diverted over $25 million to a sham company he owned and operated. (Id.) Sadleir falsely represented to BIT that the sham company was affiliated with a legitimate media company performing work to market and promote Aviron's business. (Id.) Sadleir also misappropriated at least $13.8 million of BIT's invested funds. (Id.) Sadleir used the misappropriated money to support his lavish lifestyle, including cash withdrawals and purchases of a Tesla and a mansion in Beverly Hills, California. (Id. at ¶ 32.) Then, in 2019, Sadleir forged BIT personnel signatures to authorize the release of collateral that BIT had valued at approximately $3 million and secured to protect its interest in the notes. (Id. at ¶ 2.)

---

[1]       "No." means the ECF docket entry number for documents entered on this action's docket. "Criminal No." means the ECF docket entry number for documents in the parallel criminal action.

Hon. John G. Koeltl
June 4, 2022
Page 2

The Complaint alleges that Sadleir thereby violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5. (*Id.* at ¶ 3.) The Complaint therefore seeks an injunction against Sadleir from future violations of these provisions and an injunction preventing Sadleir from participating in the issuance, offer, or sale of any security unless purchased or sold for his own personal account. (*Id.* at ¶ 6(a) & (d).) The Complaint further seeks a judgment requiring Sadleir to disgorge his ill-gotten gains with prejudgment interest and to pay a civil penalty. (*Id.* at ¶ 6(b)-(c).)

### B. The Parallel Criminal Action

On May 22, 2020, the day the SEC filed its Complaint, Magistrate Judge Fox unsealed a criminal complaint, alleging two counts of wire fraud and one count of aggravated identity theft, in *United States v. William Sadleir*, 20 Crim. 320 (PAE) ("Criminal Action") (Criminal No. 1.) On June 23, 2020, an Indictment was filed alleging substantially the same conduct as the SEC's Complaint. (*Compare* No. 1 *with* Criminal No. 6.) On November 9, 2020, this Court granted the United States' unopposed motion to intervene in this SEC action against Sadleir and to stay the proceeding. (No. 15.)

On January 19, 2022, Sadleir pleaded guilty to two counts of wire fraud pursuant to a plea agreement. (Criminal No. 71 at 3 & Criminal No. 75.) Sadleir stipulated to a sentencing guidelines' range of 108 to 135 months of incarceration. (Criminal No. 75, Tr. 19). In addition, Sadleir agreed to pay restitution of approximately $31 million and to forfeit the mansion and Tesla he acquired using misappropriated funds. (*Id.* at 20.) Sadleir's sentencing hearing is currently scheduled for June 14, 2022. (*Id.* at 34.)

### C. The Judgment's Terms

The Judgment would enjoin Sadleir (1) from violating the anti-fraud provisions of the federal securities laws alleged in the SEC's Complaint and (2) from participating in the issuance, offer, or sale of any security unless he is purchasing or selling securities for his own personal account. With respect to monetary relief, the Judgment would allow the SEC to move for monetary relief at a later time, presumably after Sadleir's sentencing, if the parties cannot reach a settlement. The Judgment provides, among other things, that "solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court."

## II. The Court Should Lift the Stay and Approve the Judgment

As an initial matter, the Court should lift the stay solely to allow the SEC to submit the Judgment and the Court to rule on the SEC's request to approve the Judgment. Neither the United States, which sought the stay, nor Sadleir opposes the lifting of the stay for this purpose. And there is no reason to delay the Court's consideration and, if appropriate, entry of the Judgment.

The Court should then approve the Judgment because it is fair and reasonable and does not disserve the public interest. "[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved,…in the event that the consent decree includes injunctive relief." *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (quotation marks and citations omitted). The Second Circuit has explained that a district

court evaluating the fairness and reasonableness of a SEC consent judgment should assess at least four factors: (1) "the basic legality of the decree"; (2) "whether the terms of the decree, including its enforcement mechanism, are clear"; (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294–95 (citations omitted).

The Judgment satisfies all four of these factors. *First*, the sole remedies the Judgment would impose—the injunctions—are legal, because Congress has expressly authorized them. *See* 15 U.S.C. §§ 77t(b) & 78u(d). *Second*, the injunctions and their enforcement mechanism are clear. As long as Sadleir does not engage in securities fraud or participate in the issuance, offer, or sale of securities other than for his own personal account he will not violate the injunctions. Furthermore, the Judgment makes clear that the Court would retain jurisdiction to enforce these terms. *Third*, the Judgment reflects a resolution of claims in the Complaint, at least insofar as the parties have agreed upon them. Indeed, the Complaint's Prayer for Relief specifically requests the permanent injunctions reflected in the Judgment. (No. 1 at 14.) *Fourth*, no improper collusion or corruption has tainted the Judgment, as the parties have reached this partial resolution at arms' length. The Judgment is therefore fair and reasonable.

Next, the Judgment's injunctions do not disserve the public interest. "The job of determining whether the proposed S.E.C. consent decree best serves the public interest …rests squarely with the S.E.C., and its decision merits significant deference." *Citigroup*, 752 F.3d at 296. Here, Sadleir should be enjoined from committing securities fraud to protect the investing public, because "the commission of past illegal conduct is highly suggestive of the likelihood of future violations" as a matter of law. *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975).

In addition, a tailored injunction preventing Sadleir from participating in the issuance, offer, or sale of any security unless trading for his own account serves the public interest by protecting investors. Courts routinely authorize injunctions tailored to prohibit defendants from engaging in specific activity that may pose a danger to investors based on the defendants' conduct. For example, courts in this District and elsewhere have granted injunctions similar to the one the parties have agreed on here for misconduct such as misrepresentations to investors and misappropriation of investor funds. *See, e.g., SEC v. Mattera,* No. 11-cv-8323, 2013 WL 6485949, at *18 (S.D.N.Y. Dec. 9, 2013) (imposing similar injunction against defendant who made misrepresentations that an investment would hold shares in pre-IPO companies and who diverted investor funds); *SEC v. Hurd,* No. 13-cv-04464, 2014 WL 12561073, at *8 (C.D. Cal. Feb. 21, 2014) (same).

For these reasons, the SEC respectfully requests that the Court (1) lift the stay to enable the SEC to file the partial consent Judgment by ECF and (2) then approve the Judgment.

Respectfully submitted,

/s/ Andrew S. Dean
Andrew S. Dean
Assistant Regional Director

cc: Matthew L. Schwartz, Esq., counsel for Sadleir (by ECF)
Jared P. Lenow, Esq., Assistant United States Attorney (by ECF)